The plaintiff brought this action asking, among other things, for an injunction to restrain the defendant from continuing in the sawdust business or engaging in the business of selling sawdust in the state of Connecticut. The claim of the plaintiff was based on a contract between the parties which provided that for five years after the defendant ceased to be employed by the plaintiff, he would not engage in the sawdust business in any capacity in this State. The case was tried to the court and judgment entered in favor of the defendant, the basis of the court's decision being that the plaintiff was not entitled to equitable relief because he did not come into equity with clean hands. The only question involved on this appeal is whether or not the trial court was correct in this conclusion.
The material facts found by the court are as follows: On May 12th, 1927, and for a long time prior thereto, up to the commencement of this action, the plaintiff had been the real owner of a business consisting of buying and re-selling sawdust to merchandising establishments located in all the principal cities and towns of the State and had built up a regular trade with a *Page 558 
large number of customers. During this period, until December 10th, 1935, with the exception of several short intervals, the defendant was employed to sell and deliver sawdust to the trade and solicit business from customers with the exception of those located in the city of New Haven. Shortly before May 12th, 1927, his employment had ceased and on that day the parties entered into a written agreement which provided that the defendant was to be employed by the plaintiff, and in consideration thereof he agreed not to engage in the sawdust business in Connecticut for five years after the termination of his employment. Immediately after the execution of the agreement, he re-entered the employment and remained therein until December 10th, 1935, except for several short periods. On that day, he left. The agreement was then in full force and effect. Since that day, the defendant has violated the agreement, causing irreparable damage to the plaintiff and will cause further damage if the violations continue.
Subsequent to the execution of the agreement, the plaintiff caused his wife to execute and record in the West Haven town clerk's office certificates stating that she was the sole owner of the business; and caused automobiles used in the business to be registered in his wife's name. At the time of the execution of the agreement, his only bank account was a savings account in the name of his wife. The reason for the transfer of the registration of the automobiles to his wife and for recording his business in his wife's name was because he had been arrested for driving while under the influence of intoxicating liquor, and for this reason could not obtain insurance on his cars in his own name, and for the further reason that one of his trucks had been in collision with another automobile *Page 559 
and he desired to protect himself against damage claims arising out of the collision.
Upon these facts, the trial court concluded that the plaintiff, by causing title to his property to be transferred to his wife subsequent to the execution of the agreement, effectually prevented the defendant from enforcing any rights which the latter might have thereunder; and that because of these transfers the plaintiff was not in court with clean hands and was therefore not entitled to equitable relief. It is undoubted law that if a plaintiff's claim "grows out of or depends upon or is inseparably connected with [his] own prior fraud, a court of equity will, in general, deny him any relief, and leave him to whatever remedies and defenses at law he may have. If a contract has been entered into through fraud or to accomplish a fraudulent purpose, a court of equity will not, at the suit of one of the fraudulent parties, set it aside, and thus restore to the plaintiff the property which he has fraudulently transferred." Gest v. Gest, 117 Conn. 289,296, 167 A. 909. "The parties to such transaction, as between each other, will not be permitted to prove their fraudulent purposes in order to escape the obligations of their contract; the grantor will not be permitted to prove his own fraudulent purpose in order to avoid the valid contract he has made; nor will the grantee be permitted to prove the fraud, in which he participated, for purposes of avoiding the obligation of his valid contract." Bouton v. Beers,78 Conn. 414, 416, 62 A. 619; Brown v. Brown, 66 Conn. 493,499, 34 A. 490; Nichols v. McCarthy, 53 Conn. 299,324, 23 A. 93. "The maxim [however] `only applies to the particular transaction under consideration, for the court will not go outside the case for the purpose of examining the conduct of the complainant in other matters or question his general character for *Page 560 
fair dealing. The wrong must be done to the defendant himself and must be in regard to the matter in litigation.'" Lyman v. Lyman, 90 Conn. 399, 406,97 A. 312. "Though an obligation be indirectly connected with an illegal transaction, it will not thereby be barred from enforcement, if the plaintiff does not require the aid of the illegal transaction to make out his case." Yale Gas Stove Co. v. Wilcox, 64 Conn. 101,128, 29 A. 303; Hamilton v. Hamilton,113 Conn. 306, 309, 155 A. 217; Armstrong v. American Exchange National Bank, 133 U.S. 433,10 Sup. Ct. 450, 461; 1 Pomeroy, Equity Jurisprudence (4th Ed.) 399; 21 C.J. 187.
The contract, as far as appears, was fairly entered into between the parties and was when made free from fraud affecting either of them or third parties. The plaintiff later placed his business in his wife's name and transferred certain of his property to her for the purpose in part of preventing the enforcement of a claim against him arising out of an automobile collision. This was not intended to work a fraud on the defendant nor did it have that effect. It does not appear that the defendant had any claim which he was asserting or might assert against the plaintiff. For the enforcement of any right arising under the contract, the defendant could at any time have disregarded the transfers and taken any property of the plaintiff required to satisfy his claim by attachment and execution as still belonging to the transferor. Sanford v. DeForest, 85 Conn. 694, 698, 84 A. 111. So far as the defendant was concerned, it was a collateral matter entered into subsequent to the contract between the parties and in no way affected their obligations to each other thereunder. No question appears to have been raised at the trial or in brief but that the provisions of the restrictive covenant in the contract are reasonably *Page 561 
necessary for the fair protection of the employer's business in view of the peculiar and individual circumstances of trust and confidence existing between the parties, and do not unreasonably restrict the rights of the employee, and that the plaintiff is entitled to some injunctive relief. It follows that the trial court was in error in holding that the plaintiff was not entitled to equitable relief upon the theory that he did not come into equity with clean hands.
 There is error; the judgment is reversed and the cause remanded to the Town Court of West Haven with direction to enter judgment in favor of the plaintiff for an injunction.
In this opinion the other judges concurred.